UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUBIN, SCHWARTZ, & GOLDMAN, INC.,
and GS & L PROPERTIES, a Michigan Co-Partnership

                                 Plaintiffs,

CIVIL CASE NO. 05-40281

v.

HONORABLE PAUL V. GADOLA
U.S. DISTRICT COURT

THE TRAVELERS INDEMNITY COMPANY
OF AMERICA,

                                 Defendant.
_____/

## I.   Introduction

Plaintiffs Lubin, Schwartz, & Goldman, Inc., and GS & L Properties (together "Plaintiffs") have brought a claim for breach of contract against Defendant Travelers Indemnity Company of America, arising out of Defendant's alleged improper failure to pay an insurance claim. Now before this Court is Defendant's motion for summary judgment. Defendant argues that Plaintiffs' claim should be dismissed because: (1) Plaintiffs did not comply with two preconditions necessary for coverage and (2) the sustained property damage is not covered under the express terms of the policy. For the reasons below, this Court will **GRANT** Defendant's motion for summary judgment.

**II.     Background**[1]

Co-plaintiff GS & L Properties is the owner of a one-story office building located at 2365-2369 Franklin Road, Bloomfield Hills, Michigan. GS & L rents office space to multiple tenants, including co-plaintiff Lubin, Schwartz, and Goldman, Inc., an insurance agency. The building in question was constructed in 1986. The four exterior walls each have several windows. These walls are constructed of concrete block below the windows and wood framing above the windows. Cedar siding and a veneer of brick panels originally covered the exterior face of the walls.

The brick panels that were used consisted of one-half-inch-thick bricks adhered to styrofoam backing material. The backing had wood furring on it that allowed the brick veneer panels to be attached directly to the concrete block walls.

Sometime during July or August 2003, GS & L discovered that a small number of individual bricks had fallen to the ground from the rear of the building. GS & L contacted Signal Building Company ("Signal"), a general contractor and insurance restoration firm, to repair the fallen bricks. Signal employee Joseph Jacques inspected the damage and concluded that the fallen bricks had detached from one of the brick panels. His opinion was that the bricks had fallen because they had become unfastened from the styrofoam backing. Pl. Resp., Ex. E, pp. 31-32. Jacques further concluded that other brick panels around other sides of the building were also possibly becoming

---

[1]Because this is a motion for summary judgment, the Court must take the facts in the light most favorable to the non-moving party, Plaintiffs. *See 60 Ivy St. Corp. V. Alexander*, 822 F.2d 1432 (6th Cir. 1987).

unfastened. *Id*. at 43-44, 57-58.

Jacques referred the matter to his supervisor, Chris Ammann, President of Signal Building Company. After a second inspection, Signal determined that all of the brick panels should be removed and replaced, rather than patching only the fallen bricks. On August 8, 2003, GS & L agreed that Signal should replace all of the brick panels around the entire building with cedar siding. Signal then applied for the appropriate building permit from Bloomfield Township. The permit was issued on September 22, 2003, and Signal began to remove the brick panels.

When the brick panels were removed, Signal found that, below the windows, the wood furring was decayed. Pl. Resp., Ex. B., pp. 27-28. Ammann testified that a large degree of the wood backers were so deteriorated that they crumbled when touched. *Id.* at 28. He also testified that the wood furring was discolored. *Id.* Ammann's opinion was that trapped moisture had caused the deterioration. *Id.* at 27-28. Ammann further testified that the deterioration was not overtly visible, but was continuously found around the building as more bricks were removed. *Id.* at 31-34.

Signal hired a structural engineer, Isaac Sheppard, Ph.D., P.E., to inspect the building. Sheppard confirmed that, based on an overhang design defect, moisture had gotten behind the styrofoam backing and remained trapped there, causing the wood furring to rot. Pl. Resp., Ex. H, pp. 57-58. Sheppard characterized the rotted wood as "hidden decay," because it could not be easily found until the bricks and styrofoam backing had been removed. *Id*. at 77. Sheppard testified that he believed that poor ventilation and inadequate overhangs, which were a result of the design and

3

construction of the building, were the cause of the hidden decay. *Id*. at 41, 43, 57-60; Def. Mot., Ex. 7, pp. 61-63; Ex. 10, pp. 2-3.

By November 2003, Signal had removed the brick panels and replaced it with cedar siding on three of the four sides of the building. After stopping work for the winter in December of 2003, Signal completed the project in July of 2004.

On approximately November 10, 2003, after much of the work by Signal had been completed, Plaintiffs' representative, Robert Schwartz, called Plaintiffs's claim manager, Linda Booker, and told her that Plaintiffs wished to file an insurance claim. Plaintiffs were insured by Defendant for its property and liability insurance. Ms. Booker filed a claim with Defendant on November 12, 2003. Defendant subsequently denied Plaintiffs' claim.

On August 2, 2005 , Plaintiffs filed an action in state court against Defendant. Defendant removed the case to this Court on September 2, 2005, invoking federal diversity jurisdiction.

On May 30, 2006, Defendant filed a motion for summary judgment, arguing that Defendant properly denied Plaintiffs' claim. Defendant argues that Plaintiffs' claim should be dismissed because: (1) Plaintiffs did not comply with two preconditions necessary for coverage, in particular, (a) Plaintiffs failed to give Defendant timely notice of the loss or damage, and (b) Plaintiffs failed to separate the damaged and undamaged property losses; and(2) the sustained property damage is not covered under the express terms of the policy.

On July 14, 2006, Plaintiffs responded, arguing that, under the circumstances, timely notice

was given to Defendant, Defendant was not required to separate the damaged and undamaged property losses, and that the loss is covered under the terms of the policy.

Because the Court finds that the loss is not covered under the terms of the policy, the Court need not consider the timeliness of the notice or separation of property issues.

### III.     Legal Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party.  *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).  The Court is not required or permitted, however, to judge the evidence or make findings of fact.  *Id.* at 1435-36.  The moving party has the burden of showing conclusively that no genuine issue of material fact exists.  *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the

5

effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission

6

of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

**IV.     Analysis**

This diversity action is governed by the laws of the state of Michigan. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Michigan law, the rules of interpretation and construction of an insurance contract are the same rules as for any other contract. *Comerica Bank v. Lexington Insurance Co.*, 3 F.3d 939, 942 (6th Cir. 1993). Policy language is to be given its ordinary meaning, unless the policy specifies a different or special meaning. *Id*. *See also Ford Motor Credit Co. v. Aetna Casualty and Surety Co.*, 717 F.2d 959, 961 (6th Cir. 1983).

The Michigan Supreme Court has explained that a "fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written." *Rory v. Continental Ins. Co.*, 703 N.W.2d 23, 30 (Mich. 2005) (emphasis and citations omitted). Accordingly, "[a]bsent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Universal Underwriters Ins. Co. v. Kneeland*, 628 N.W.2d 491, 494 (Mich. 2001). If a contract term is ambiguous, then the interpretation that is most favorable to the insured must be adopted. *Comerica Bank*, 3 F.3d at 942. Whether a contract's

7

terms are ambiguous is a question of law for the Court to determine. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 818 (6th Cir. 1999). A contract is said to be ambiguous when its words may reasonably be understood in different ways. *Farm Bureau v. Nikkel*, 596 N.W.2d 915, 919 (Mich. 1999). If the Court finds no ambiguity, it should proceed to interpret the contract and may do so at the summary judgment stage. *GenCorp, Inc.*, 178 F.3d at 818.

Under Michigan law, the purpose of contract interpretation is to ascertain the intent of the parties. *Rasheed v. Chrysler Corp.*, 517 N.W.2d 19, 29 n.28 (Mich. 1994) (citing *Stine v. Continental Casualty Co.*, 349 N.W.2d 127, 137 (Mich. 1984); *Brauer v. Hobbs*, 391 N.W.2d 482, 484 (Mich. App. 1986)). Whenever possible, the parties' intent is to be discerned from "the language in the contract, giving it its ordinary and plain meaning as such would be apparent to a reader of the instrument." *Wilkie v. Auto-Owners Ins. Co.*, 664 N.W.2d 776, 780 (Mich. 2003) (citing *Bianchi v. Automobile Club of Michigan*, 467 N.W.2d 17, 20 n.1, (Mich. 1991)).

The terms in question are contained in a twenty-one page document entitled "BUSINESSOWNERS PROPERTY COVERAGE SPECIAL FORM"[2] *See* Pl. Mot., Ex. 1. Determining whether a loss from a collapse[3] is covered requires an examination of several

---

[2] The Court notes that the capitalization used throughout the insurance policy is inconsistent. When possible, the Court has quoted the exact policy language, retaining the capitalization as it appears in the policy.

[3] The Court duly notes that Defendant has disputed whether Plaintiffs' loss constituted a "collapse" under the terms of the policy. *See* Pl. Mot., pp. 13-14. Because the Court finds that summary judgment in favor of Defendant is appropriate on other grounds, the Court assumes,

8

provisions of the contract, most notably the sections entitled, "Covered Causes of Loss," "Additional Coverages," and "Exclusions."

First, examining the "Covered Causes of Loss" and "Exclusions," the clear and unambiguous language provides that collapse damage is specifically excluded from the "Covered Causes of Loss" provision under the exclusion of Section B.2.k.:

> A. COVERAGE- BUILDING, BUSINESS PERSONAL PROPERTY AND BUSINESS INCOME
> \*\*\*\*
> 4. Covered Causes of Loss
> RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
> \*\*\*
> b. Excluded in Section B., Exclusions
> \*\*\*
> B. EXCLUSIONS
> \*\*\*
> 2. We will not pay for loss or damage caused by or resulting from any of the following:
> \*\*\*
> k. Collapse, except as provided in the Additional Coverage for Collapse. But if the loss or damage by a Covered Cause of Loss Results at the described premises, we will pay for that resulting loss or damage.

Reading the text, it is clear that collapse damage is specifically excluded from the "Covered Causes of Loss" of Section A.4, through the exclusion of Section B.2.k. The language of B.2.k, however, does indicate that although collapse is excluded from coverage under the "Covered Causes of Loss" provision, there may be some collapse protection under the separate "Additional

---

without deciding, that the loss was a "collapse" under the terms of the policy.

Coverages" provision. The "Additional Coverages" provision, found at Section A.6, provides:

> A. COVERAGE- BUILDING, BUSINESS PERSONAL PROPERTY AND BUSINESS INCOME
> \*\*\*\*
> 6. Additional Coverages
> \*\*\*
> b. Collapse
> We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:
> \*\*\*
> (2) Hidden decay;

A plain reading of this section demonstrates that although a collapse is not covered under the "Covered Causes of Loss" provision, a collapse "caused only by," "hidden decay" is covered under the "Additional Coverages" provision of A.6.b. Vitally important in the present case is the limiting phrase within that provision, "caused only by." That phrase clearly and plainly indicates that if the collapse is caused, even in part, by something other than one of the enumerated causes of Section A.6.b, *i.e.* "Hidden decay," the collapse is not covered under the Additional Coverages provision.

In the instant case, taking the facts in the light most favorable to the non-moving Plaintiffs, the experts of each party agree that the loss in question was caused, at least in part, by the original defective design of the building. Pl. Resp., Ex. H, pp. 41, 43, 57-60; Def. Mot., Ex. 7, pp. 61-63; Ex. 10, pp. 2-3. Accordingly, there is no issue of material fact that the loss was caused, at least in part, by a factor other than hidden decay. Therefore, because the collapse was not "caused only by"

"hidden decay," the damage is not covered under the "Additional Coverages" of Section A.6.

Furthermore, turning again to the "Exclusions" provision of Section B, coverage is also explicitly excluded when there is loss or damage resulting from faulty design:

> B.  EXCLUSIONS
> \*\*\*
> 3.  We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.
> \*\*\*
>     c.  Faulty, inadequate or defective:
>         \*\*\*
>         (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>         (3) Materials used in repair, construction, renovation or remodeling

A plain reading of Section B.3 excludes coverage of loss or damage resulting from faulty, inadequate, or defective design. Therefore, because there is no question of material fact that the loss was caused, at least in part, by the defective design of the building, Section B.3.c provides yet another reason that Plaintiffs' collapse loss is excluded by the unambiguous terms of the policy.

Finally, Plaintiffs argue that, even though defective design may be one of the causes of the loss, the concurrent cause of loss clause, found in Section B.3, provides for relief: "But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage." Plaintiffs' application of this clause in the present case is unavailing. A concurrent cause of loss only provides relief when that concurrent cause of loss is one of the "Covered Causes of Loss" in

11

Section A.4.  *See* Section B.3.  As this Court has described above, collapse is not included within the "Covered Causes of Loss" in Section A.4.  Instead, collapse is specifically excluded from the "Covered Causes of Loss" under the clear language of Section B.2.k.  Therefore, the Court must conclude that the concurrent cause of loss clause is inapplicable in the instant situation.

An examination of the policy and the facts, taken in a light most favorable to Plaintiffs, reveals that there is no genuine issue of material fact regarding Plaintiffs' claims, there is no coverage for Plaintiffs' loss under the express terms of the policy, and summary judgment for Defendant is appropriate.

### V.     Conclusion

The Court, examining Plaintiffs' claims and the terms of the policy in question, finds the terms clear and unambiguous.  Therefore, the Court must give those terms their ordinary meaning and enforce the contract as written.  *See Comerica Bank*, 3 F.3d at 942; *Rory,* 703 N.W.2d at 30.  Under such an interpretation, considering the facts in a light most favorable to the non-moving Plaintiffs, *see 60 Ivy St. Corp.*, 822 F.2d at 1435, there is no genuine issue of material fact as to whether Plaintiffs' loss is covered under the policy.  Consequently, for the reasons stated above, summary judgment in favor of Defendant is appropriate.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [docket entry #14] is **GRANTED**.

**IT IS FURTHER ORDERED** that this cause of action, Case. No. 05-40281, is

**DISMISSED WITH PREJUDICE**.

    **SO ORDERED.**

Dated:  March 29, 2007             s/Paul V. Gadola
                                                   HONORABLE PAUL V. GADOLA
                                                   UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on  March 29, 2007  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
    Michele A. Chapnick; Mark L. Dailey; Jeffrey R. Learned; Joseph L. Milanowski    , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                                          .


                                                   s/Ruth A. Brissaud
                                                   Ruth A. Brissaud, Case Manager
                                                   (810) 341-7845